IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JANE DOE, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 17-cv-_____ |
| | ) | |
| THE VILLAGE OF ROBBINS, ILLINOIS, a | ) | |
| municipal corporation, and JOHN DOES 1 | ) | |
| THROUGH 25, all whose true names are | ) | |
| unknown, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

## COMPLAINT

Plaintiff, Jane Doe, by her attorneys, Jenner & Block LLP, complains against The Village of Robbins, Illinois ("Robbins") and John Does 1 through 25 (the "Individual Defendants" and together with Robbins, the "Defendants") and states as follows:

## NATURE OF THE ACTION

1. Plaintiff is a female individual who was raped in Robbins. After the rape, Plaintiff submitted to an invasive medical examination in order for a rape evidence kit to be prepared. The completed evidence kit was delivered to the Robbins Police Department. Robbins however, failed to investigate the rape committed against Plaintiff. That failure was part of Robbins' custom and practice not to investigate rapes against women and girls generally—a custom and practice that was established, implemented, and overseen by the Individual Defendants. Moreover, based upon publicly available reports and comments by the Cook County Sheriff's Office (the "CCSO"), Defendants took affirmative steps, including making false reports to the Illinois Department of State Police, to hide from victims and the public the fact that Robbins, as a matter of course, does not investigate rape cases where the victims are female. Those efforts were successful for decades

and included Defendants' attempts to hide their misdeeds from the CCSO. Plaintiff first became aware (and only could have become aware) of Defendants' failures towards her and all female rape victims in May 2015. While the full extent of Defendants misdeeds still have not become public, Plaintiff's own investigation and the recent press coverage of Defendants' egregious misconduct have begun to expose Robbins' decades-long policy of not investigating rapes against women and girls. Accordingly, Plaintiff now brings this action seeking (1) damages resulting from Defendants' violation of the equal protection clause of the United States Constitution; and (2) injunctive relief requiring Robbins to meaningfully investigate rape cases involving female victims.

## PARTIES

2.      Plaintiff Jane Doe is an adult female resident of Markham, Illinois, which is located in Cook County. At the time Plaintiff was raped, she was a fourteen-year-old minor and a resident of Robbins, Illinois, which also is in Cook County. Plaintiff has family who still live in Robbins, and Plaintiff regularly travels into and through Robbins to visit her family. Plaintiff files this case under the pseudonym "Jane Doe" to avoid the public disclosure of information of the utmost intimacy to members of her family, friends, and acquaintances who do not know the details of her rape and beating.

3.      Defendant The Village of Robbins, Illinois is aware of the identity of Jane Doe.

4.      Defendant The Village of Robbins, Illinois is a municipal entity located in Cook County, Illinois. At all relevant times, Defendant The Village of Robbins, Illinois operated the Robbins Police Department (the "Department").

5.      Defendants John Does 1 through 25 are aware of the identity of Jane Doe. The name "John Doe" is used as Plaintiff does not know the names of these Defendants.

6.  Defendants John Does 1 through 25 are individuals who were employed by Defendant The Village of Robbins.

## JURISDICTION AND VENUE

7.  This Court has jurisdiction over this case under 28 U.S.C. §1331 and §1343(a)(3) and (a)(4).

8.  Venue is proper in this Court for Robbins pursuant to 28 U.S.C. §1391 because Robbins is located in this district and the events or omissions giving rise to Plaintiff's claims occurred in this district.

9.  Venue is proper in this Court for the Individual Defendants pursuant to 28 U.S.C. §1391 because the Individual Defendants committed the acts or omissions giving rise to Plaintiff's claims in this district.

## FACTS

**Plaintiff's Rape And Defendants' Failure To Investigate**

10.  On November 21, 1991, Plaintiff was brutally attacked and raped by Carl Flowers ("Flowers"). At the time of the rape, Plaintiff was fourteen years old.

11.  Flowers viciously attacked Plaintiff as she was walking home from basketball practice. Flowers then dragged Plaintiff to a nearby creek, where he proceeded to beat and rape her.

12.  After Flowers raped and beat Plaintiff, he attempted to drown Plaintiff in a nearby creek. Plaintiff survived the attempted drowning only by pretending to be dead until Flowers left.

13.  After the attack, Plaintiff walked home and, her grandmother, after hearing Plaintiff's horrific account of her rape and beating, called the paramedics.

14.  Plaintiff was taken to Ingalls Memorial Hospital where hospital personnel completed a rape evidence collection kit (an "Evidence Kit") by conducting an invasive and

3

intrusive medical exam that included taking body fluid samples from Plaintiff. The hospital later provided Plaintiff's Evidence Kit to the Department.

15. The next day, November 22, 1991, Plaintiff went to the Department and gave a statement concerning her rape and beating to Robbins police officers. She also provided a physical description of Flowers to a sketch artist, who prepared a depiction of Flowers.

16. The Department is a division of Defendant The Village of Robbins, Illinois.

17. At the November 22, 1991 meeting, Department personnel told Plaintiff that because she was able to provide a physical description of her rapist, the Department would try to find and arrest her attacker.

18. The Department never contacted or communicated with Plaintiff, or her mother—Plaintiff's legal guardian while Plaintiff was a minor—again.

19. On November 26, 1991, the Department submitted Plaintiff's Evidence Kit to the Illinois State Police (the "ISP").

20. The ISP tested Plaintiff's Evidence Kit and drafted a preliminary report detailing the ISP's findings concerning the Evidence Kit.

21. On January 24, 1992, the ISP gave the Department both Plaintiff's Evidence Kit and the ISP's preliminary findings concerning the Evidence Kit.

22. The ISP's preliminary report noted the presence of a male's DNA material in Plaintiff's Evidence Kit.

23. Plaintiff's Evidence Kit and the ISP's findings remained within the Department's sole possession, custody and control from January 24, 1992, until May 13, 2013.

24. Upon information and belief, including recent media reports detailing Robbins' practice towards rape investigations, after Plaintiff went to the Department and spoke with the

4

police, neither the Department nor any Individual Defendant ever examined Plaintiff's Evidence Kit, reviewed the ISP's findings, or further investigated Plaintiff's rape after sending Plaintiff's Evidence Kit to the ISP.

**Defendants' Practice Of Failing To Investigate Rapes**

25. Since at least 1986, Robbins has engaged in a policy, practice, and/or custom of failing to investigate rapes against females.

26. The Individual Defendants were responsible for establishing, implementing, and overseeing Robbins' policy, practice, and/or custom of failing to investigate rapes against females and/or were responsible for overseeing and training others in the Department in accordance with that policy, practice, and/or custom.

27. From at least 1986 until January 23, 2013, the Department collected 176 Evidence Kits in connection with rapes that occurred in Robbins. Every victim is a woman or girl. Fifty-five of those Evidence Kits, however, were not sent to a lab for even a preliminary testing. Based upon publicly available reports and comments by the CCSO, with regard to those Evidence Kits that were tested, including Plaintiff's, Defendants did not conduct any follow-up work on or review any of those Evidence Kits—they simply sat collecting dust in the Robbins evidence room.

28. For the 176 Evidence Kits the Department collected from 1986 to January 23, 2013, the Department filed only 45 corresponding police reports. Many of those reports are incomplete.

29. Based upon publicly available reports and comments by the CCSO, since at least 1986, Robbins' policy, practice, and/or custom has been to not: (i) conduct follow-up interviews with rape victims (ii) conduct interviews with potential offenders; (iii) review the lab results from Evidence Kits; or (iv) attempt to preserve evidence that could aid in the investigation of rapes.

5

That policy, practice and/or custom was established, implemented and overseen by the Individual Defendants.

30. In many cases, the lab testing an Evidence Kit asked for the Department's permission to run a full analysis on the Evidence Kit. In the overwhelming majority of those cases, the Department never responded to the requests.

31. From 1997 until 2013, 121 Evidence Kits taken by medical personnel from a rape victim were then given to Robbins to assist in the investigation of those rapes. During that same period, Robbins only reported 72 rapes (less than 60%) as having occurred. Put simply, for decades Robbins did not investigate and systematically underreported rape cases, even when the Department possessed evidence of those crimes.

32. Given the breadth and extensive nature of Robbins' failure to meaningfully investigate rapes against women and girls, the only plausible conclusion is that Robbins' policy, practice, and/or custom of failing to investigate rapes, including Plaintiff's, was known or should have been known to policymakers at Robbins and the Department, including the Individual Defendants, and was ratified by those policymakers; and Robbins, and the Department, and the Individual Defendants failed to take any action to prevent Department personnel from continuing to engage in that custom and/or practice.

33. Given the pervasiveness and the period time over which these practices occurred, Robbins and the Individual Defendants not only tolerated but ratified the Department's institutional practice of not investigating rapes by:

    a. Failing to properly supervise the Department;

    b. Failing to properly train Department personnel;

6

    c. Failing to forward evidence of the criminal acts committed against Plaintiff and other female victims of rape for prosecution;

    d. Failing to ensure evidence of Plaintiff's rape and rapes of other female victims was not ignored or discarded;

    e. Failing to ensure that rapes that occurred in Robbins were investigated;

    f. Failing to ensure evidence of Plaintiff's rape and rapes of other female victims was not lost or mishandled;

    g. Failing to discipline, restrict or control Department personnel for failing to investigate Plaintiff's rape and rapes of other female victims;

    h. Failing to ensure proper recordkeeping of rape investigation documents and records.

34. Defendants never informed Plaintiff of Robbins' policy, practice, and/or custom of systematically failing to investigate rapes against women and girls.

35. Defendants never informed Plaintiff that Robbins did not conduct any meaningful investigation into Plaintiff's rape.

36. Defendants did not make public its policy, practice, and/or custom of failing to investigate rapes, and Plaintiff has uncovered no evidence that suggests that Robbins ever informed any party outside of the Department and Robbins of Robbins' policy, practice, and/or custom of failing to investigate rapes.

37. Through its non-disclosure, Defendants and the Department ensured that they were the only individuals or entities that had evidence of Robbins' failure to investigate Plaintiff's rape and of Robbins' general policy, practice, and/or custom (dating back to at least 1986) of not investigating rapes against women and girls.

38. Defendants' silence and inaction independently prevented anyone outside of Robbins and the Department from knowing about Robbins' decision not to investigate Plaintiff's rape and rapes committed against other women and girls.

**Defendants' Practices Revealed By The Cook County Sheriff's Office**

39. Upon information and belief, the first entity or individual outside of Defendants and the Department to discover Robbins' policy, practice, and/or custom of not investigating rapes against women and girls—a practice it followed in Plaintiff's case—was the CCSO.

40. Illinois' Sexual Assault Evidence Submissions Act, which took effect on September 1, 2010, required all Illinois law enforcement agencies, including the Department, to provide to the Illinois Department of State Police a written inventory of the number of Evidence Kits that had not been submitted to a laboratory for analysis. (720 ILCS 202/20) (2010). The Sexual Assault Evidence Submissions Act also required the Department to submit for testing all collected Evidence Kits that are or were at the time of collection "the subject of a criminal investigation." (720 ILCS 202/20). An Evidence Kit should be the subject of a criminal investigation unless it is determined that the Evidence Kit was not taken in connection with a crime—cases in which the alleged victim has recanted, for example.

41. The Department reported to the ISP that it had 44 untested Evidence Kits (a representation which itself underreported how many untested Evidence Kits actually were in the Department's possession) and that it did not plan to test any of them. Under the Sexual Assault Evidence Submissions Act, this report constituted a representation by the Department that none of its untested kits were taken in connection with a crime. That representation strains credulity and the only plausible explanation for this stance is that Robbins, as well as the Individual Defendants who submitted and complied the report, were attempting to hide from the CCSO the fact that

8

Robbins had a policy, practice, and/or custom of failing to investigate rapes against women and girls.

42. The CCSO did not find the Department's position that none of its 44 untested Evidence Kits were taken in connection with a crime to be credible, and the Department's false report was a key factor in the CCSO's decision to investigate the Department's handling of rapes beginning in 2013.

43. On January 22, 2013, the CCSO met with Department personnel to discuss the Department's handling of rape cases and began to uncover the Department's failure to conduct any meaningful investigation into rape cases since at least 1986.

44. During the course of the CCSO's investigation, the CCSO discovered Plaintiff's file, which showed that the Department had taken no steps to investigate Plaintiff's rape after sending her Evidence Kit to the ISP. What is more, the CCSO discovered that the Department had not even properly maintained its bare bones records regarding Plaintiff's rape. For example, the sketch artist's depiction of Flowers was missing, as were the clothes Plaintiff was wearing when she was beaten and raped that she had turned over to the Department as evidence.

45. On May 13, 2013, the CCSO resubmitted Plaintiff's Evidence Kit to the Northeastern Illinois Regional Crime Lab for retesting. That retesting resulted in a positive match for Flowers.

46. Plaintiff first became aware that Defendants failed to conduct any investigation into her rape on May 8, 2015, when she was informed of that fact by the CCSO. As of May 8, 2015, the Department's policy, practice, and/or custom of not investigating rapes against women and girls had not been disclosed publicly.

Case: 1:17-cv-00353 Document #: 1 Filed: 01/17/17 Page 10 of 16 PageID #:10

47. Plaintiff did not become aware that Defendants had, for decades, failed to conduct any meaningful investigation into this decades-long systematic failure to investigate any rape against a woman, until CCSO informed her of that fact in May 2015.

**Defendants Conduct Causes Significant Damage To Plaintiff**

48. Defendants' continued failure to investigate Plaintiff's rape harmed and continues to harm Plaintiff.

49. Since the time of Plaintiff's rape, Defendants' actions have denied and continue to deny Plaintiff and all rape victims in Robbins justice for their rapes. Because of Defendants' decision not to conduct an investigation into Plaintiff's rape, and Defendants' efforts to conceal that decision, Flowers has not and will not be tried for raping Plaintiff.

50. In addition, as a result of Robbins' actions, Plaintiff suffered extreme emotional and physiological damage: first from not knowing if or when Flowers may rape again, and then further damage upon learning of Defendants' deliberate indifference to her rape.

**COUNT ONE**

**42 U.S.C. § 1983:**
**Violations of Equal Protection On The Basis Of Sex**

51. Plaintiff incorporates paragraphs 1-50 as though fully stated herein.

52. At all relevant times herein, Defendants and the Department acted under color of state law.

53. At all relevant times hereto, all of the victims from whom the Department obtained the evidence contained in the Evidence Kits were women or girls.

54. At all relevant times herein, Defendants followed an unwritten and ongoing policy or custom (established, implemented, overseen, and perpetuated by the Individual Defendants) of responding differently and affording less protection to victims of rape, who were exclusively

10

female in Robbins, than to victims of other crimes. Upon information and belief resulting from counsel's investigation, Robbins' custom, policy, and/or practice was to not investigate rape, of which all the victims were women and girls, as thoroughly as it did other crimes. For other crimes, Defendants would interview witnesses, put together police reports, and collect evidence. Based upon publicly available reports, these basic investigatory steps were not taken for rape cases as a matter of course. For example, Plaintiff only had an interview with the Department because Plaintiff took it upon herself to seek an interview from Department personnel the day after she reported her rape. The fact that Defendants systematically investigated other crimes more thoroughly is evidence of its custom, policy, and/or practice to give female rape victims less protection than victims of other crimes as Defendants, for decades, simply did not investigate rape cases.

55. Based upon the pervasiveness of the practices and other facts described herein, at all relevant times, Defendants knew that female victims of rape had provided evidence of rape to the Department, but that as a custom and practice, the Department was not taking steps to reasonably investigate the allegations. Further, on information and belief, Defendants' failure to investigate rape cases was not oversight, but a conscious choice not to investigate or pursue rape cases. Even in situations in which a rape victim provided the name of her rapist and submitted herself to the taking of an Evidence Kit, and that Evidence Kit provided a confirmed DNA match to the rapist the victim identified, Robbins did nothing. In other words, even for rapes that required no investigation, for which all Defendants had to do was pick up a suspect from his home, Defendants' standard operating procedure was to do nothing.

56. Robbins' custom, policy, and/or practice of failing to investigate rapes committed against women and girls was done with a discriminatory motive. Robbins' policy/custom/practice

is sex-based and its adverse effect on women and girls reflects invidious sex and gender-based discrimination.

57. Based upon the facts alleged herein, the only logical conclusions that can be reached are that Robbins' policy of discriminating against victims of rape adversely affects women and girls, and further, that Defendants adopted the policy of not investigating rape crimes because of its adverse impact on women and girls, like Plaintiff. There is no other plausible explanation—except for an animus towards women and girls—as to why the only crime for which 100% of the victims are female and 100% of the perpetrators are male was and is systematically investigated less (by not being investigated at all) than other crimes for which women and girls did not entirely comprise the victim population.

58. Defendants' systematic disregard of its duty toward its rape victims cannot plausibly be explained as merely the uneven allocation of police resources, because the impact of that conduct exclusively harmed women and girls. Instead, Defendants' approach to rape cases must be construed as the selective, intentional withdrawal of police protection for rape victims on account of their sex.

59. In furtherance of its unconstitutional policy, Defendants, with deliberate indifference, failed to train its police officers as to the rights of female victims of rape with whom the police came into contact, including but not limited to Plaintiff.

60. Defendants' deliberate indifference and willful and wanton conduct created a danger of an increased risk of harm to female victims of rape, including Plaintiff, by failing to investigate rape crimes.

61. Robbins' policies identified herein have no rational basis and do not bear a substantial relationship to any important governmental objective.

12

62. Defendants followed its discriminatory policy, practice, and/or custom in connection with Plaintiff's rape. In so doing, Defendants violated Plaintiff's constitutional rights.

63. Based upon the preceding factual allegations, Defendants were at all relevant times aware that the Department's investigation of rape cases was essentially non-existent and was materially worse than its efforts to investigate other crimes. Moreover, Defendants knew that this fact had a disparate impact on women and girls as all rape victims were female. In the face of this knowledge, Defendants took no steps to rectify this disparity. Consequently, it must be concluded that not only were Defendants conscious of the disparate treatment and its impact on women and girls, but Defendants also knowingly decided not to rectify the problem. The only logical explanation for Defendants' failure to take any steps to alleviate the harm being done to rape victims, like Plaintiff, is that Defendants' failure was intentional and was motivated by Plaintiff's sex and the sex of the other rape victims.

64. Plaintiff's injuries are the result of Robbins' unconstitutional, discriminatory municipal policy or custom, and/or practice.

65. As described above, the constitutional injury Defendants inflicted on Plaintiff was caused by persons with final policymaking authority for the City of Robbins.

66. The above described conduct of the City of Robbins and the Individual Defendants constitutes a violation of 42 U.S.C. § 1983 as Defendants' conduct deprived Plaintiff of her rights under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

67. Plaintiff is entitled to compensatory damages and other non-pecuniary relief.

## COUNT TWO

### Injunctive Relief

68. Plaintiff incorporates paragraphs 1-67 as though fully stated herein.

69. Plaintiff continues to visit her family in Robbins. Consequently, because Plaintiff is a woman, Plaintiff is at risk of the Department ignoring and failing to investigate additional rapes that may be committed against her in Robbins.

70. Plaintiff is entitled to injunctive relief mandating that Robbins meaningfully investigate rape cases involving female victims.

71. In order to seek help from Robbins, rape victims, like Plaintiff, must undertake—immediately after being raped—an emotionally scarring process whereby they subject their bodies to invasive and intrusive medical procedures in order to create an Evidence Kit.

72. Plaintiff and other similarly situated women and girls who report their rapes to the Department are required to relive the rape by telling Department personnel what happened.

73. These have been and continue to be painful, traumatic experiences for Plaintiff and similarly situated female rape victims, and the reason Plaintiff and these other women and girls undertake these steps is to help the Department meaningfully investigate their rapes and hopefully bring the men who raped them to justice.

74. Instead, Robbins engages in a policy, practice, and/or custom of failing to investigate rape cases. As part of that policy, practice, and/or custom, Robbins, through the Department and the Individual Defendants, ignores Evidence Kits, fails to follow up on the testing of Evidence Kits, and ignores the statements of victims, like Plaintiff. In doing so, Robbins effectively victimizes rape victims, including Plaintiff, for a second time, as they subject

themselves to invasive and traumatic physical and verbal examinations with no chance that such treatment will result in justice for their rapes.

75. Without the intervention of this Court, neither Plaintiff nor other female rape victims can stop Robbins from continuing its violations of equal protection.

76. Consequently, Plaintiff seeks injunctive relief requiring Robbins to cease the equal protection violations and other violations it is and has been committing against female rape victims since at least 1986, and to establish and disseminate policies and procedures that ensure that allegations of rape and sexual assault are diligently investigated. These policies and procedures should include: 1) training members of the Department in how to properly investigate rape and sexual assault cases; 2) sending Evidence Kits to labs for preliminary testing; 3) drafting police reports for Evidence Kits; 4) conducting interviews with potential offenders where they are identified; 5) reviewing the lab results of Evidence Kits, and conducting follow-up when appropriate; 6) conducting follow-up interviews with rape victims; 7) preserving investigation evidence; and 8) reporting rape cases to the Cook County State's Attorney's Office. In addition, the Court should appoint a Receiver, Monitor or Special Master to ensure these required changes are implemented.

WHEREFORE, Plaintiff respectfully requests:

A. A trial by jury,

B. A judgment against Defendants in an amount to be determined at trial plus attorneys' fees and costs,

C. Injunctive relief requiring The Village of Robbins to meaningfully investigate rapes,

D. The appointment of a Receiver, Monitor, or Special Master to oversee the Department's operations, and

E. Such other and further relief as this Court deems just.

                      Respectfully submitted,

                      **Jenner & Block LLP**

Dated: January 17, 2017            By: */s/ J. Kevin McCall*

J. Kevin McCall (3125685)
Andrew Vail (6279951)
Landon Raiford (6297473)
Briana Sprick Schuster (6310231)
Blake Sercye (6306968)
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL 60654
Telephone: (312) 222-9350
Facsimile: (312) 527-0484
*Attorneys for Plaintiff*